UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

SCOTT HAYDEL,

               Plaintiff,              Case No.:

    -against-

EXPONENTIAL WEALTH INC.,        **COMPLAINT**
RYAN MICHAEL MURNANE,
KRYSTALYNNE MURNANE, and    **Jury trial demanded.**
CHRISTOPHER PAUL,

               Defendants.
_____X

      Plaintiff, by his attorney, William A. Thomas, complaining of the defendants, alleges as follows on information and belief:

### NATURE OF THE CASE

    1.    This action is brought under 18 U.S.C. §§ 1961-68 and New York common and statutory law by Scott Haydel against Ryan Michael Murnane, Krystalynne Murnane and Christopher Paul (RICO defendants) and Exponential Wealth Inc. (RICO enterprise for their unlawful, false, misleading and unconscionable misrepresentations and sales tactics that resulted in damages of over $121,759.70 to induce plaintiff to purchase collectible numismatic, semi-numismatic, and bullion coins that are not worth the value at which they were purchased and will never attain the value as claimed or return on investment as represented.  Plaintiff made four purchases from the defendants in the total amount of 98,510.00, and in three of those transactions never even as much as received the coins he supposedly purchased: the defendants simply took his money.  Plaintiff seeks to rescind his purchases and/or recover actual damages, consequential

damages, punitive damages, statutory treble damages, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

2.      The RICO Defendants conducted and/or participated in the business and financial affairs of Exponential Wealth Inc. (the RICO enterprise) through a pattern of racketeering activity, to wit: engaged in repeated and systematic mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 that generated multiple and repeated unlawful coin sales to plaintiff that, in turn, generated exorbitant compensation for them.  Defendants caused Exponential Wealth Inc. to use the interstate mails and wires to repeatedly make and/or send fraudulent coin solicitations, sales receipts and/or other purchase confirmations to plaintiff.

3.      By their unlawful acts, defendants Ryan Murnane, Krystalynne Murnane and Christopher Paul (i) conducted and/or participated in the affairs of Exponential Wealth Inc, (in violation of 18 U.S.C. § 1962(c)); and/or (ii) conspired to violate 18 U.S.C. § 1962(b) and(c) (in violation of 18 U.S.C. §1962(d)), and defrauded plaintiff in the process. Ryan Murnane, Krystalynne Murnane and Christopher Paul committed these substantive RICO offenses by causing Exponential Wealth Inc. to engage in multiple predicate acts of mail fraud and wire fraud—all the while knowing of, and agreeing to, the overall objective of such fraud, to wit: generating exorbitant compensation for themselves. Ryan Murnane,  Krystalynne Murnane and Christopher Paul knew that making and/or sending fraudulent solicitations, sales receipts and/or purchase confirmations to plaintiff was fraudulent, misleading and unlawful.  Ryan Murnane, Krystalynne Murnane and Christopher Paul knew such wrongful acts and practices would generate multiple and repeated unlawful coin sales to plaintiff that, in turn, would generate exorbitant compensation for them.  Defendants Ryan Murnane,  Krystalynne Murnane and Christopher Paul engaged in the scheme to take unfair advantage of plaintiff.  The wrongful acts

of defendants Ryan Murnane,  Krystalynne Murnane and Christopher Paul proximately and/or directly caused plaintiff to be substantially overcharged for the coins.

4.     Defendants Ryan Murnane,  Krystalynne Murnane and Christopher Paul conducted and/or participated in the business and financial affairs of Exponential Wealth Inc. (the RICO enterprise) through a pattern of racketeering activity, to wit: Defendants Ryan Murnane,  Krystalynne Murnane and Christopher Paul participated, directly and indirectly, with one another and defendant Exponential Wealth Inc. in repeated and systematic mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, that generated multiple and repeated unlawful coin sales to plaintiff that, in turn, generated exorbitant compensation for them.  In association with one another, defendants Ryan Murnane,  Krystalynne Murnane and Christopher Paul caused Exponential Wealth Inc. to use the interstate mails and wires to repeatedly make and/or send fraudulent coin sales receipts and/or other purchase confirmations to plaintiff.

## JURISDICTION AND VENUE

5.     This Court has original subject-matter jurisdiction over the RICO claims pursuant to 18 U.S.C. §§ 1964(a) and 1964(c), and pursuant to 28 U.S.C. § 1331 insofar as they arise under federal law. This Court has diversity jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1332(a), as plaintiff is a citizen of Lousiana and all defendants are citizens of states other than Louisiana, and the amount in controversy exceeds $75,000 exclusive of interest, costs and attorneys' fees; alternatively, the Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367 insofar as they are so related to the federal claims that they form part of the same case or controversy. This Court has *in personam* jurisdiction over defendants because at all relevant times defendants resided, maintained citizenship, were found,

had agents, conducted business and/or sold the collectible numismatic, semi-numismatic, and bullion coins at issue in this case to plaintiff in and/or from New York.

6.      At all relevant times, defendants resided, were found, had agents and/or conducted business in the Southern District of New York.  Defendants sold the collectible numismatic, semi-numismatic, and bullion coins at issue in this case to plaintiff in and/or from the Southern District of New York.  A substantial part—if not all—of defendants' wrongful acts and omissions occurred in the Southern District of New York.  Accordingly, venue is proper in this Court pursuant to 28 U.S.C § 1391(a).

## **PARTIES**

7.      Plaintiff, Scott Haydel, is a citizen and resident of Louisiana.

8.      Defendant Exponential Wealth Inc. ("Exponential") is a New York corporation incorporated in New York on August 10, 2015, with its principal place of business at 99 Wall Street, Suite 1144, New York NY 10005.

9.      Defendant Ryan Murnane ("Ryan") is a natural person and a citizen and resident of the State of New York.  His address is 888 Edgegrove Ave., Staten Island NY 10309. Ryan is the principal owner and a managing director of defendant Exponential.  On information and belief Ryan has, in the course of doing business, operated under false names including Ryan Michaels and Ryan Erickson.

10.      Defendant Krystalynne Murnane ("Krystalynne") is a natural person and a citizen and resident of the State of New York.  Her address is 888 Edgegrove Ave., Staten Island NY10309.  Krystalynne is a managing director of defendant Exponential.

10.     Defendant Christopher Paul ("Paul") is a natural person and a citizen and resident of the State of New York.  His address is 888 Edgegrove Ave., Staten Island NY 10309.  Paul is a managing director of defendant Exponential.

11.     Defendant Exponential markets and sells collectible numismatic, semi-numismatic, and bullion coins directly to consumers over the telephone and via its website, and is principally owned and controlled by defendants Ryan, Krystalynne and Paul, who managed, operated and treated defendant Exponential as their personal bank account--and continue to do so--in such a way that Exponential is their alter ego because corporate formalities are not followed and separate and distinct books and records are not maintained.  Exponential is undercapitalized and the line between owner/manager and the entity is substantially blurred to the point that it is difficult, if not impossible, to determine where the individual defendants end and Exponential begins.  Exponential exists as a mere tool and business conduit for Ryan, Krystalynne and Paul and possibly other owners, which has resulted in an injustice to plaintiff and the diminution of available resources from which plaintiff may obtain satisfaction of the damages directly and/or proximately caused by defendants' wrongful conduct.

## FACTUAL BACKGROUND

12.     Defendants operate a sales and telemarketing operation for the purpose of selling collectible numismatic, semi-numismatic, and bullion coins[1] directly to consumers over the telephone and via the internet.  Defendants and their employees make hundreds of intrastate and interstate sales calls per month — via the telephone — utilizing one or more of the following

---

[1] The term "numismatic" refers to collectible coins whose value is based upon qualities other than the metal content of the coin, such as appearance, population, grade, rarity, etc..  "Semi-numismatic" refers to a coin whose value partially derives from its numismatic value and partially from the value of its precious metal content.  Bullion coins derive their value almost entirely from the fair market value of the precious metal content.

unlawful, false, misleading and unconscionable high-pressure sales tactics typical of the precious

metals/coins/bullion direct sales industry:

(i)     fabricating stories about the origin and value of the coins;

(ii)    representing qualities of the coins and guaranteeing the coin investments will
        substantially appreciate, knowing their representations are false and misleading;

(iii)   convincing customers to "max out" their credit cards, to purchase "unique" coins—
        that, in fact, are not unique;

(iv)    offering customers a "money back guarantee" with no intention of ever honoring the
        guarantee:

(v)     advising customers to purchase unique and/or rare coins, when the coins are neither
        unique nor rare;

(vi)    representing to customers that their coins will outperform other types of investments—
        without any specific underlying data supporting such assertions;

(vii)   failing to follow client directives on the sale or purchase of coins;

(viii)  intentionally delaying transactions to obtain better margins that are not passed on to
        the customer; and,

(ix)    various other acts and practices that may be uncovered during discovery.

13.     Through a series of related transaction between June 21, 2018, and August 13,

2020, defendants developed a professional relationship with plaintiff and convinced him to

purchase numismatic, semi-numismatic and bullion coins as investments.  Plaintiff purchased

various coins from defendants as investments, but through misrepresentation and fraud was

damaged in the amount of approximately $121,759.70, being a loss of the purchase price and

consequential damages.  This series of purchases was based upon sales tactics and

representations made by the defendants: that Mr. Haydel plaintiff would realize a substantial

return on his investment; that the coins were a safe investment; and that plaintiff would receive

fair market value for the amount he paid for his coins.   Also during this period, the defendants

played a shell game, trading coins back and forth, and continually representing that plaintiff was improving his financial status and the viability of his investments when he was not.

14.     Plaintiff's four purported purchases occurred as follows: (1) on June 21, 2018, plaintiff ostensibly purchased ten "SS Republic seated Liberty Silver" half-dollars for $9,201; (2) on July 17, 2018, plaintiff ostensibly purchased "SS Republic" silver half dollars for 7,799; (3) on November 8, 2018, plaintiff ostensibly purchased fifteen "Silver American Eagle" and three "Peace Dollar" coins for a total of 62,910; and (4) on August 13, 2020, plaintiff ostensibly purchased three pre-sold Silver American Eagle coins for 18,600. All purchases were made by check.  Defendants misled plaintiff and enticed him into believing the coins were a sound investment, that he was getting "good deals," and that the coins were unique and/or rare. However, they failed to advise plaintiff that he was paying substantially more than the fair market price and incurring immediate and substantial losses with each transaction.

15.     As a direct and/or proximate result of Defendants' above wrongful acts and practices, plaintiff has suffered (and continues to suffer) substantial economic damages, which defendants refuse to remedy.  This case has resulted.

**CLAIMS FOR RELIEF**

### COUNT I

### DEFENDANTS RYAN, KRYSTALYNNE AND PAUL
### A PATTERN OF UNLAWFUL ACTIVITY UNDER 18 U.S.C. § 1961 *ET SEQ.*: MAIL FRAUD AND WIRE FRAUD

16.     The preceding factual statements and allegations are incorporated by reference.

17.     By engaging in the above-described open-ended scheme to defraud plaintiff—a scheme that also was a consistent, regular and dominant part of the manner in which defendants Ryan, Krystalynne and Paul  participated in and conducted the day-to-day business affairs of Exponential—these defendants instigated, perpetrated and executed a scheme to defraud plaintiff, to wit: Ryan, Krystalynne and Paul engaged in repeated and systematic mail fraud and wire fraud, as described above, in violation of 18 U.S.C. §§ 1341 that 1343 that generated multiple and repeated unlawful coin sales to plaintiff, as described above, that in turn generated exorbitant compensation for them.  Ryan, Krystalynne and Paul caused Exponential to use the interstate mails and wires to repeatedly make and/or send fraudulent solicitations, sales receipts and/or purchase confirmations to plaintiff for the above-described coin transactions over a two-year period.  As such, Ryan, Krystalynne and Paul conducted and/or participated in the business and financial affairs of Exponential (the RICO Enterprise) through a pattern of racketeering activity, to wit: repeated and systematic mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, as described above, that generated multiple and repeated unlawful coin sales to plaintiff that, in turn, generated exorbitant compensation for them. Ryan, Krystalynne and Paul committed these substantive RICO offenses, all the while knowing about, and agreeing to, the overall objective of the fraud—generating exorbitant compensation for themselves. By their unlawful actions, therefore, they conducted and/or participated in the affairs of Exponential in violation of 18 U.S.C. § 1962(c) and/or conspired with others,  the identities of whom are only known by them at this stage in the litigation, to violate 18 U.S.C. §§ 1962(b) and 1962(c) in violation of 18 U.S.C. §1962(d), and defrauded plaintiff, and possibly other customers, in the process.

18.    Defendants Ryan, Krystalynne and Paul caused Exponential to engage in this fraudulent scheme with the intent, *inter alia*, to (i) shift the burden of proof to plaintiff knowing he does not have unlimited resources and (ii) generate exorbitant compensation for themselves. The wrongful actions and fraudulent scheme of defendants Ryan, Krystalynne and Paul constitute mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

***Continuity of the Pattern:***

19.    The multiple, repeated and continuous acts of mail fraud and/or wire fraud described in Paragraphs 12 and 17 above constitute a pattern of unlawful activity under 18 U.S.C. § 1961(1); (5).  Nothing about defendants' schemes to defraud plaintiff indicated, or now indicate, that the schemes would ever terminate.  In fact, others who have been victimized by defendants' scheme currently have an action pending in this Court.[2]  Moreover, and independent of the duration of the scheme, their wrongful acts were a consistent, regular and dominant part of the manner in which they participated and conducted the day-to-day business and financial affairs of Exponential.

20.    The RICO defendants demonstrably have run the coin investment scheme for at least three and a half years through Exponential, and their conduct has at all times manifested an unmistakable nexus between predicate RICO offenses such as mail fraud and wire fraud and a clear threat of continuing activity, and indeed their activity is ongoing.  Moreover, on information and belief they have been engaged in substantially similar sales of overgraded and artificially overpriced coins to consumers/customers nationwide since Exponential was founded in or about 2015.  Since that time defendants have perpetrated their frauds in interstate commerce upon dozens if not hundreds of unsuspecting victims, including Dr. David S. Field, a resident of Iowa who was induced to open an account with Exponential on or about March 11, 2019, and

---

[2] See Field v. Exponential Wealth Management Inc. et al., 21 CV 1990 (JGK) (SLC), discussed at ¶ 69 herein.

who thereafter made a series of purchases between that date and October 4, 2019, totaling

1,420,800, in reliance on express misrepresentations that the coins were insured for $5,000,000

when in fact no insurance existed, the defendants going so far as to furnish bogus certificates of

insurance purportedly issued by Lloyd's of London; in the instant case defendants similarly

represented to plaintiff that the purchases were insured by the Federal Deposit Insurance

Corporation, as reflected in receipts issued to plaintiff, one of which bore the FDIC seal/logo in

the lower right-hand corner.  In fact no such insurance existed, and FDIC does not insure

investments of this nature.  Likewise, Exponential has refused to liquidate and return Dr. Field's

account moneys as alleged in his action in this Court, which asserts that Exponential employees

told him his coins were worth 2,885,582, and claimed to be sending him a check in full

liquidation of the account in April, 2020, but actually sent nothing until mailing him a check for

$500 in August, 2020, and nothing more--just as the instant plaintiff, Mr. Haydel, requested

account statements multiple times and, after hearing various excuses and assurances, never got

them; when defendants claimed that a profit had been made from a sale they would only apply it

to another purchase but never send the proceeds back to plaintiff.  Similarly, just as defendants

are alleged to have used multiple false names in Dr. Field's action, in the instant matter plaintiff

received invoices and documents reflecting various last names for what is believed to have been

defendant Ryan Murnane and others, including one with the resoundingly spurious name of

"Roland Munsterfaum." Accordingly defendants' vivid pattern of fraudulent conduct may be

observed over a period of at least two years, i.e., mid-2018 through mid-2020, and involved

multiple victims from multiple states.

      21.     On information and belief Defendants continue to engage in the same deceptive

and fraudulent practices with other victims unto the present moment.  Defendants' predicate acts

of fraud amount to a regular way of conducting their ongoing business and pose a specific

threat of repetition extending indefinitely into the future.

**COUNT II**
**DEFENDANTS RYAN, KRYSTALYNNE AND PAUL**
**VIOLATION OF 18 U.S.C. § 1962(c)**

22.     The preceding factual statements and allegations are incorporated by reference.

23.     Exponential is an "enterprise" engaged in, and the activities of which affected,

interstate commerce within the meaning of 18 U.S.C. §§ 1961(4); 1962(c);  and 1962(d).

24.     Defendants Ryan, Krystalynne and Paul are "persons" within the meaning of 18

U.S.C. §§ 1961(3); 1962(c); 1962(d).

25.     Defendants Ryan, Krystalynne and Paul conducted and/or participated in the

business and financial affairs of Exponential (the RICO Enterprises) through patterns of unlawful

activity within the meaning of 18 U.S.C. §§ 1961(1)(B); 1961(5); 1962(c); to wit, the multiple,

repeated and continuous acts of mail fraud and wire fraud, in violation of 18 U.S.C. §§ 2; 1341;

and 1343, as set forth above.

26.      Defendants Ryan's, Krystalynne's and Paul's patterns of unlawful activity and

corresponding violations of 18 U.S.C. § 1962(c) (*see* paragraphs 12 and 17 above) proximately

and/or directly caused plaintiff to suffer injury to his business and/or property within the

meaning of 18 U.S.C. § 1964(c), to wit: plaintiff was damaged by, *inter alia*, the fraudulent and

inflated prices he paid for the above-listed coins, consequential damages related to the funds he

borrowed to purchase the coins, and the corresponding mental anguish he suffers.  Defendants

Ryan, Krystalynne and Paul committed these substantive RICO offenses by using Exponential to

engage in multiple predicate acts of mail fraud and wire fraud, all the while knowing about, and

agreeing to, the overall objective of the mail fraud—generating exorbitant compensation for

themselves.  They knew their tactics and marketing practices were misleading and unlawful and

would cause plaintiff to suffer damages that were reasonably foreseeable by them and/or

anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

**COUNT III**
**DEFENDANTS RYAN, KRYSTALYNNE AND PAUL**
**VIOLATION OF 18 U.S.C. § 1962(d) BY**
**<u>CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(c)</u>**

27.     The preceding factual statements and allegations are incorporated by reference.

28.     Exponential is an "enterprise" that was engaged in, and the activities of which

affected, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), and 1962(d).

29.     Defendants Ryan, Krystalynne and Paul are "persons" within the meaning of 18

U.S.C. §§ 1961(3), 1962(c), and 1962(d).

30.     Defendants Ryan, Krystalynne and Paul conspired with other persons, the

identities of whom are only known by them at this stage in the litigation, within the meaning of

18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c); that is, they conspired to conduct and/or

participate in the business and financial affairs of Exponential (the RICO Enterprises) through a

pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(c), 1961(5), and

1962(c), to wit: the multiple, repeated and continuous acts of mail fraud and wire fraud, in

violation of 18 U.S.C. §§ 2, 1341 and1343 as set forth above.

31.     Defendants Ryan's, Krystalynne's and Paul's pattern of unlawful activity and

corresponding violations of 18 U.S.C. § 1962(d) proximately and/or directly caused plaintiff to

suffer injury to his business and/or property within the meaning of 18 U.S.C. § 1964(c), to wit:

plaintiff was damaged by, *inter alia,* the fraudulent and inflated prices she paid for the above-

listed coins. Defendants Ryan, Krystalynne and Paul agreed to commit these substantive RICO

offenses by using Exponential to engage in multiple predicate acts of mail fraud and wire fraud,

all the while knowing about, and agreeing to, the overall objective of the mail fraud—generating

exorbitant compensation for themselves. They knew their tactics and marketing practices were

misleading and unlawful and would cause plaintiff to suffer damages that were reasonably

foreseeable by them and/or anticipated as a substantial factor and a natural consequence of their

patterns of unlawful activity.

**COUNT IV**
**FRAUD AND/OR FRAUDULENT CONCEALMENT**

32.     The preceding factual statements and allegations are incorporated herein by

reference.

33.     In order to sell the overvalued coins to plaintiff, defendants utilized one or more of

the above unlawful, false, misleading and unconscionable high-pressure sales tactics typical of

the precious metals/coins/bullion direct sales industry.  Specifically, defendants and their

employees falsely and/or misleadingly represented to plaintiff that he was a "preferred

customer," plaintiff "needed the coins," plaintiff was "getting a good deal," and plaintiff "would

not lose any money" on the purchases.  Defendants and their employees also falsely represented

the current value of the coins with full knowledge that the coins were not worth the value at

which they were purchased nor will the coins attain the return of investment as promised.

34.     Defendants made the above false representations to plaintiff with the intent that he

rely upon them and with full knowledge that such representations were false when made.

Plaintiff reasonably relied on defendants' above material and false representations when deciding

to purchase the grossly overvalued coins which, in fact, he purchased to his financial detriment

and defendants' financial gain.  As a direct and/or proximate result of defendants' false and

misleading representations about the overvalued coins, plaintiff suffered (and continues to suffer)

damages in the form of, *inter alia,* the amounts paid to defendants for the silver coins in excess of

13

their value, consequential damages related to the funds he borrowed to purchase the coins and mental anguish damages.

35.     Defendants also concealed their wrongful actions until a significant amount of the damage to plaintiff was done.   All of the above facts were material to plaintiff's decision to purchase coins from defendants.

36.     By virtue of the confidential business relationship between plaintiff and defendants, defendants had a duty to disclose the above concealed material facts to plaintiff. Their deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above concealed material facts, is the equivalent of false representations and/or omissions.  Such false representations and/or omissions were made knowingly and intentionally or, at the very least, in reckless disregard of plaintiff's rights and interests.

37.     Plaintiff justifiably relied on Defendants' false representations and/or omissions to his financial detriment by purchasing the grossly overvalued coins.  Defendants' wrongful actions constitute fraud at New York common law.

38.     Defendants concealed their wrongful actions with the intent to mislead and defraud plaintiff.  Plaintiff was not aware of, nor through the exercise of due diligence could he have become aware of defendants' wrongful actions until such wrongful actions were committed and brought to light by third parties.  Due to the parties' confidential business relationships, which were predicated on their mutual trust and confidence, and defendants' superior knowledge and/or means of knowledge, defendants had a duty to disclose to plaintiff the above material false information.  Defendants' failure to do so constitutes fraudulent concealment at New York common law.

## COUNT V
## <u>NEGLIGENT MISREPRESENTATION</u>

39.         The preceding factual statements and allegations are incorporated herein by reference.

40.         Defendants made certain representations to plaintiff in the course of their business and in transactions in which defendants had a substantial monetary interest.  Defendants also supplied false information for the specific purpose of guiding plaintiff in his purchase of the grossly overvalued coins.

41.         Defendants, however, failed to exercise reasonable care and competence in obtaining and communicating such information to plaintiff by, *inter alia,* utilizing one or more of the above unlawful, false, misleading and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry and/or making the above false and material misrepresentations and omissions.

42.         Plaintiff justifiably relied on Defendants' negligent misrepresentations when purchasing the grossly overvalued coins, which directly and/or proximately caused him to suffer damages to the financial benefit of Defendants.  Defendants' wrongful conduct constitutes negligent misrepresentation at Texas common law.

## COUNT VI
## <u>NEGLIGENCE</u>

43.         The preceding factual statements and allegations are incorporated herein by reference.

44.         Defendants negligently valued, promoted, marketed, advertised and sold grossly overvalued silver coins to plaintiff.  In doing so, defendants owed a duty to plaintiff to exercise reasonable care in valuing, promoting, marketing, advertising and selling the coins. Defendants breached their duty to plaintiff by failing to exercise reasonable care in valuing, promoting,

marketing, advertising and selling the coins to plaintiff. Defendants' wrongful conduct directly

and/or proximately caused plaintiff to suffer damages. Defendants' wrongful conduct constitutes

negligence at New York common law.

## COUNT VII
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### *(Deceptive and Unfair Trade Practices)*

45. The preceding factual statements and allegations are incorporated herein by

reference.

46. Plaintiff is a "consumer" and defendants are "persons" that may be sued pursuant

to § 349 of New York's General Business Law (GBL).

47. By their above wrongful acts and/or misrepresentations, Defendants engaged in

false, misleading and deceptive acts and practices in violation of GBL § 349. Defendants have

made and continued to make deceptive, false and material misleading statements concerning the

coins they sell, namely selling, packaging the coins sold with false and misleading statements,

and have (i) represented that the coins have value that they do not have and that significant

investor and collector demand exists for the coins that will cause them to appreciate in value,

which does not exist and will not happen; (ii) represented that the coins are rare and/or unique

and have substantial desire to investors and collectors, which will cause the coins to appreciate

significantly in the future, which they are not; and (iii) failed to disclose the above information

about the coins, which Defendants knew at the time of the transactions, with the intent to induce

plaintiff to purchase the coins that plaintiff would not have purchased had Defendants disclosed

such information. Plaintiff relied on Defendants' above misrepresentations and omissions in

purchasing the coins to his financial detriment.

48.     By the acts and conduct alleged herein defendants committed unfair or deceptive acts and practices by, inter alia, induce plaintiff to purchase collectible numismatic, semi-numismatic, and bullion coins that are not worth the value at which they were purchased and will never attain the value as claimed or return on investment as represented.

49.     The practices employed by defendants whereby they advertised, promoted, marketed and sold their coins are unfair, deceptive, and materially misleading.

50.     Defendant Exponential is liable for the above wrongful acts committed by their nonparty employees during the course and scope of their employment with Exponential under the doctrine of respondeat superior; to wit, Defendants' employees' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Defendants' business, and (iii) to accomplish the objective for which the employees were hired (*i.e.,* marketing overvalued coins to customers like plaintiff)—all of which directly and/or proximately caused plaintiff to suffer damages to the financial benefit of Defendants.

51.     The foregoing deceptive acts and practices were directed at consumers, such as the plaintiff herein.

52.     Plaintiff suffered a loss as a result of defendants' deceptive and unfair trade practices. Specifically, as a proximate result of same, plaintiff suffered monetary losses associated with the purchase of the coins he obtained from defendants and/or the premium price paid by the plaintiff insofar as said purchases were based on the inaccurate representations alleged herein of defendants.

**COUNT VIII**
**CONSPIRACY**

53.     The preceding factual statements and allegations are incorporated herein by reference.

54.        Defendants (and possibly others), either working together as a combined group or in sub-combinations of two or more, affirmatively conspired to engage in the wrongful actions set forth above.  By doing so, defendants conspired to accomplish an unlawful purpose or a lawful purposed by an unlawful means.  As such, defendants conspired to commit the wrongful actions outlined in Counts I-IV, above, and took one or more affirmative measures in furtherance thereof, all of which directly and proximately caused plaintiff to sustain actual and consequential damages.  Defendants' wrongful actions constitute civil conspiracy at New York common law.

## COUNT IX
## MONEY HAD AND RECEIVED

55.  The preceding factual statements and allegations are incorporated by reference.

56.  By their above-described wrongful actions and/or inaction, defendants hold money obtained by a) the wrongfully charged and collected purchase prices paid by plaintiff for the grossly overvalued coins misrepresented and sold to her by defendants; and b) coins impermissibly sold to third parties and the funds retained without payment to plaintiff or replacement of his coins, that, in equity and good conscience, belongs to plaintiff.  Defendants, therefore, should be compelled to refund such wrongfully charged and collected funds under the equitable doctrine of money had and received.

## COUNT X
## UNJUST ENRICHMENT

57.        The preceding factual statements and allegations are incorporated herein by reference.

58.        Defendants (and possibly other persons and entities, including Defendants' employees) have been unjustly enriched by (i) being paid an excessive value for coins that are not supported by any reasonable valuation; (ii) using the fraudulently obtained revenues and

profits paid by plaintiff, and (iii) generating a return on the amounts described in (i) and (ii). Accordingly, plaintiff seeks to impose a constructive trust over (and recover) all amounts by which Defendants (and possibly other persons and entities, including Defendants' employees) have been unjustly enriched.

## COUNT XI CONVERSION

59.    The preceding factual statements and allegations are incorporated herein by reference.

60.    Plaintiff has and maintains a possessory right and interest over all funds that plaintiff invested with defendants, including the profits earned on any sales of Coins.

61.    Plaintiff requested a full liquidation of his account, including the return of his invested funds.

62.    Defendants had an obligation to return plaintiff's funds.

63.    Defendants acknowledged that plaintiff was entitled to a liquidation of his account and the return of plaintiff's account balance.

64.    Defendants wrongfully continue to exercise control over plaintiff's funds.

65.    Defendants' wrongful control over plaintiff's funds and refusal to return such funds is an interference of plaintiff's ownership rights.

66.    As a result of defendants' wrongful control over his funds, plaintiff has been damaged in the amount $121,759.70, being a loss of the purchase price and consequential damages, as well as interest thereon.

67.    By virtue of the foregoing, defendants have committed the tort of conversion and plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $121,759.70 plus interest.

## TOLLING OF THE STATUTES OF LIMITATION

68. The preceding factual statements and allegations are incorporated herein by reference.

69. **EQUITABLE ESTOPPEL.** Defendants took active steps to conceal their above wrongful actions and/or inaction. The details of defendants' efforts to conceal their unlawful conduct are in their possession, custody and control, and await further discovery. At such time as this material information was first revealed to plaintiff, he exercised due diligence by retaining counsel and pursuing his claims. As such, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable estoppel.

70. **EQUITABLE TOLLING.** Defendants took active steps to conceal their above wrongful actions and/or inaction. The details of defendants' efforts to conceal their unlawful conduct are in their possession, custody and control, and await further discovery. Even by exercising reasonable diligence, plaintiff could not have discovered this information if for no other reason than he had no reason to make such inquiries. At such time as this material information was first revealed to plaintiff, he exercised due diligence by retaining counsel and pursuing his claims. As such, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable tolling.

## RESPONDEAT SUPERIOR

71. The preceding factual statements and allegations are incorporated herein by reference.

72. Defendants also are liable for the above wrongful acts committed by their employees during the course and scope of their employment by the defendants; to wit, the employees' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of defendants' business,

20

and (iii) to accomplish the objective for which the employees were hired (*i.e.*, selling overvalued coins to customers like plaintiff)—all of which directly and/or proximately caused plaintiff to suffer damages to the financial benefit of defendants—under the doctrine of *respondeat superior.*

## RELIEF REQUESTED

73.     The preceding factual statements and allegations are incorporated herein by reference.

74.     **RECISSION.**  Based on defendants' above wrongful conduct, plaintiff is entitled to recission of the transaction(s) pursuant to which defendants fraudulently sold the coins to plaintiff.

75.     **ACTUAL AND CONSEQUENTIAL DAMAGES.**  In the alternative, and as direct and proximate result of Defendants' wrongful conduct, plaintiff has suffered (and continues to suffer) damages in the form of, *inter alia*, the amounts paid to Defendants for the coins in excess of their value.  In any event, plaintiff is entitled to recover consequential damages related to the funds he borrowed to purchase the coins and the mental anguish he has suffered in connection with these transactions—in an amount to be determined by the trier of fact.  All conditions precedent to plaintiff's claims for relief have been performed and/or occurred.

76.     **PUNITIVE DAMAGES.**  Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for plaintiff's rights and interests.  Accordingly, plaintiff also is entitled to an award of punitive damages against defendants, both as punishment and to discourage such wrongful conduct in the future.  All conditions precedent to plaintiff's claim for relief have been performed and/or occurred.

77.     **TREBLE DAMAGES.**  Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct in violation of the RICO statute under 18

U.S.C. § 1964 (c) and New York's GBL § 349.  All conditions precedent to plaintiff's claims for relief have been performed and/or occurred.

78.   **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**  plaintiff also is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, *inter alia*, NY GBL § 349 insofar as defendants' aforesaid actions were willful and knowing.

**WHEREFORE,** plaintiff requests that upon final trial or hearing, judgment be awarded in his favor against the Defendants, jointly and severally for:

(a)   With respect to Counts I-III (violations of 18 U.S.C. § 1961, *et seq.*)--

  (i)   threefold the actual damages sustained by plaintiff with costs of suit, attorneys' fees, litigation expenses and court costs, all under 18 U.S.C. § 1964(c), with pre- and post-judgment interest at the highest legal rates; and

  (ii)   equitable relief, as may be appropriate, under 18 U.S.C. § 1964(a), including an equitable accounting for all benefits, consideration and profits received, directly or indirectly, including imposing a constructive trust, the voiding of unlawful transfers, and the disgorgement of all ill-gotten gains and profits.

(b)   With respect to Counts IV-XI:

  (i)   rescission;
  (ii)   actual damages to be determined by the trier of fact;
  (iii)   punitive damages;
  (iv)   treble damages;
  (v)   all amounts by which Defendants have been unjustly enriched;
  (vi)   an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including imposing a constructive trust, the voiding of unlawful transfers, and the disgorgement of all ill-gotten gains and profits;
  (vii)   pre- and post-judgment interest at the highest legal rates;
  (viii)   attorneys' fees and litigation expenses incurred through the trial and any appeals of this case;
  (ix)   costs of suit; and
  (x)   such other and further relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.

Dated: December 10, 2021

Respectfully submitted,

_____/s/_____

BY: KENNETH G. WALSH (1654)
    OF COUNSEL

WILLIAM A. THOMAS (0116)
511 Avenue of the Americas, #352
New York, New York 10011
(917) 693-3981
wthomas@watlegal.com

*Attorney for Plaintiff*